(No. 871—

NEW ERA CONSTRUCTION COMPANY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 24, 1928.*

D. A. HEBEL, for claimant.

OSCAR E. CARLSTROM, Attorney General; S. S. DuHAMEL, Assistant Attorney General, for respondent.

Mr. JUSTICE LEECH delivered the opinion of the court:

The declaration filed by claimant alleges that claimant entered into a written contract with the Department of Public Works and Buildings of the State of Illinois, for the construction of certain grading and excavations and material and other work set out in Contract No. 1403 of Route No. 8, Section 37a, Tazewell county, Illinois, which contract is on file with said Department of Public Works and Buildings, Division of Highways of said State, and copy of which is made part of said declaration; that on or about September, A. D. 1922, claimant commenced work under said contract and undertook to fully and completely carry out and perform all the terms and conditions thereof, as well as certain changes and specifications thereafter from time to time made by the engineers of said Department of Public Works and Buildings, Division of Highways; that because of changes resulting in the increase of the quantity of excavation and other work and material required to be performed by claimant, under said contract, it became physically impossible for claimant to complete said contract within the time contemplated by said contract; that the character of the excavation necessary on route

in question involved a cut through Washington Hill, between the towns of East Peoria and Washington, in said State of Illinois, and that said excavation proved to be of a different character than originally contemplated and involved cutting through deep strata of blue clay and hard-pan with pockets of quick sand and numerous springs of water; that this work was of a kind and character for which claimant was not equipped to perform and that claimant thereupon undertook to equip itself and to faithfully carry out all of the requirements and changes from time to time made by said Department of Public Works and Buildings in said contract; that the stockholders of said corporation consisted of one Jerry Conners and his wife, Alice F. Conners, and one share each was held by two other persons; that said Jerry Conners, as principal stockholder was the individual who personally had charge of the work to be performed under said contract and gave the same exclusive personal attention and continued in the performance of said contract until March 5th, 1923, when he was stricken with double pneumonia and died; that on account of changes and the character of the work which had been made and arisen in connection with the contract, the work at the time of the decease of Jerry Connors was far from completed and claimant alleges that because of the quantity of work to be performed, said contract could not be performed within the time contemplated by said department of State, nor by claimant corporation; that there was a large increase in the cost of labor and material, amounting to about 60% over the cost of labor at the time when said contract was entered into; that it was necessary for claimant to borrow money and pay interest on same; and was also obliged to pay a large bonus to sub-contractors in connection with said contract, and also to pay subsequent to the decease of said Jerry Connors the increased cost of labor in connection with the completion of said contract; that claimant received from the Department of Highways, aforesaid, the sum of $62,162.59; that the total cost of the work and materials furnished was the sum of $78,375.05, and that claimant had necessarily expended in connection with the performance of said contract the sum of $16,212.46 and that unless this claim is allowed, same will be sustained by Alice F. Connors, widow of said Jerry Connors, deceased, and bill of particulars attached to said declaration includes claim for increase of cost of labor

and materials on added work and material, and on account of said contract extending over and into the years 1923 and 1924, $11,679.43; interest on additional funds required because of the changes and additions made in said contract subsequent to the time when the same was entered into, $2,333.03; bonus paid to sub-contractor required on account of higher cost of construction in 1923 and 1924, $2,200.00.

To this declaration, the Attorney General of the State of Illinois, filed a demurrer, which is sustained, as a matter of law.

After a careful review of all the evidence, we are of the opinion that this claim should not be allowed. After the execution of the contract, a bond covering both sections 37a of said Route 8, and Section 36 thereof, was properly executed and accepted by the Division of Highways. Mr. Connors through his company immediately after the acceptance of the contract and bond began the work, and before much of the work was finished, death overtook him. At the time of his death Mr. Connors, through the New Era Construction Company, had other contracts for similar work near Bloomington, Illinois, known as Sections 9 and 10 on Route 9 and one near Eureka, Illinois, on Route 8.

Upon his death his widow and her bank, the Lake View State Bank of Cook county, Illinois, finding the affairs of Mr. Connors and the New Era Construction Company in a complicated condition undertook to straighten out the affairs, complete the work contracted for on the part of the New Era Construction Company, and settle the estate of said Jerry Connors. The New Era Construction Company was re-organized by electing Richard F. Hickey, who was connected with the Lake View State Bank, as President of the company to take the place of Jerry Connors, deceased. When Mr. Hickey took over the affairs of the corporation, he negotiated with other contractors to get them to complete the work. Mr. Maloney, prior to the death of Mr. Connors, had been foreman for the New Era Construction Company and doing work at Carlock, Bloomington, and one place in Indiana and groceries were bought on one account and furnished to all these work gangs. The work on the contract known as Carlock was sublet and the party that finished the work at Carlock was given a bonus paid by the New Era Construction Company in the

amount of $2,200.00 and this bonus of $2,200.00 is charged up as part of the loss on the contract 37-A and asked to be met as a part of the deficit and to be recovered in this claim. The testimony further shows that Morris Canty, a laborer, was paid $205.00 for work that was done before Mr. Connor's death and the foreman, Mr. Maloney, didn't know whether Mr. Canty did the work on Washington Hill or not, for which this payment was made. This item of $205.00 is also included in statement and sought to be recovered in this claim. $663.00 for Mike Shanley is included in this claim, whereas the said Mike Shanley never worked on contract 37-A; similarly a charge of $1,033.02 is charged for liability insurance, and claimant has failed to establish what part of that applied to contract designated 37-A and 36. It is the contention of the defendant, and the court believes that this Carlock bonus, amounting to $2,200.00, interest charges amounting to $2,333.04 and excess wages, amounting to $2,477.27 are all items that under no circumstances could legitimately be included in any alleged loss for contract for sections 27-A and 36.

After Mr. Connor's death, all the contracts except for 37-A and 36 were sub-let, and the widow and Mr. Hickey, as President of the New Era Construction Company, decided to go ahead and complete the work on this contract and employed Mr. Maloney as foreman to do the work. After starting the work in the hill, known as Washington Hill, Mr. Maloney found that instead of being ordinary clay there was a substance known as "Blue Clay" and that same could not be excavated without the use of dynamite. Mr. Maloney, Mr. Hickey and the Division of Highways took up the subject and the question of extra pay for excavating the blue clay in question was discussed, and it was agreed that both parties should station a man at said hill and keep account of the cost of the excavation of said blue clay and that the State would pay the cost thereof plus 14 per cent of such cost as a profit. This agreement was fully consummated and the New Era Construction Company, upon settlement was paid the sum of $19,904.54 for the work done on Washington Hill, with reference to the blue clay, of this sum $2,601.91 being a profit to the New Era Construction Company, over the actual cost of the excavation.

After the work was finished, a final settlement was made with the New Era Construction Company, and this final statement bears the signature of "New Era Construction Company, by R. F. Hickey, President", to each of the sheets composing same, designating the approval of same by said company.

It is unfortunate that this loss must be sustained by the widow of Mr. Connors, but were this court to allow this claim, it would establish a dangerous precedent for cases of similar character. We do not doubt that after the making of the contract, there was a raise in the cost of labor and material, but this situation arises in all departments of business, and the court cannot lay down a principle or establish the precedent that will render ineffective future contracts and void future bonds.

The demurrer filed by the Attorney General is sustained, and the case dismissed.