(No. 3780—

HEMP AND COMPANY, INCORPORATED, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1944.*

Claimant, pro se.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

ECKERT, J.

On May 12, 1941, Hemp and Company, Inc., an Illinois corporation, entered into two contracts with the State of Illinois, by the Secretary of State, for the manufacture of the 1942 and 1943 Illinois motor vehicle and motor bicycle license plates.

Subsequent to the execution of the contracts, the size of the 1942 passenger automobile and truck plates was increased one-eighth of an inch in length and width; such increase in plate size necessitated the use of 60,450 pounds of additional steel at a cost of $2,220.32. Also subsequent to the execution of the contracts, the size of the 1942 truck plates was increased three-fourths of an inch in length; such increase necessitated the use of 19,320 pounds of additional steel at a cost of $709.04.

At the time of the execution of the contracts, it was impossible to obtain all of the materials specified in the paint formula for the license plates, and it became necessary to use substitutes. A zinc chromate primer, then approved and adopted for use by the Army and Navy, was substituted for the black enamel primer called for in the contracts. The cost of this primer was $2.55 a gallon, as compared to $1.30 a gallon for the ordinary black enamel primer, making an additional cost of $7,500.00 for 6,000 gallons.

The changes in size in the license plates necessitated an over-all die cost of $3,304.00 which claimant intended to absorb in producing the entire order of 1942 and 1943 plates. Because of its inability to obtain steel, it was able to manufacture only a small part of the 1943 plates, and so had no opportunity to utilize the dies fully in producing plates under the 1943 contract. Claimant offers to write-off one-half of the die cost against the 1942 production, provided it is reimbursed for the remaining one-half of the cost, or $1,652.00 not utilized in manufacturing the 1943 plates.

Of the 2,001,000 pairs of plates ordered for 1943, only 155,000 were manufactured. For this 155,000 claimant incurred an additional cost of steel and zinc chromate primer in an amount of $522.23. Claim is made for the total sum of $12,603.59.

From the record it appears that the changes in the license plates were made after discussions between claimant and the Chief Clerk of the Automobile Department of the Secretary of State, subsequent to the execution of the contracts, but prior to November 13, 1941. No written memorandum of any kind was signed by either claimant or the Chief Clerk in relation to these changes. On November 13, 1941, claimant wrote to the Chief Clerk, pointing out certain higher costs "we are running into due to several changes made since the contract for plates was let." Claimant stated that it felt the items were extra costs not called for by the contracts, and hoped the Chief Clerk would give the matter favorable consideration, apparently meaning that the Chief Clerk should find some means of paying a part or the whole of such increased cost. Claimant received no reply to the letter. On March 17, 1942, when the contract was completed, formal invoice was rendered by claimant covering these

changes. No action was taken by the office of the Secretary of State on this invoice. On direct examination, Mr. Joseph L. Hemp, president of the claimant corporation, testified that from time to time claimant brought the matter of the additional charges to the attention of the Chief Clerk, and "we were assured that it would be taken care of, because Mr. Nash agreed on a number of occasions that the changes occurred and the charges were fair."

Mr. John J. Nash, called as a witness for the claimant, testified that he is the Chief Clerk of the Automobile Department of the Secretary of State, of the State of Illinois; that as such Chief Clerk he has supervision of the contracts entered into by the State of Illinois with reference to the manufacture of motor vehicle license plates; that the change in primer for the 1942 plates was made at the suggestion of the claimant. He stated: "The suggestion came from Hemp and Company that if they used the primer they used for the Navy, it would be a better primer for the plates. I O.K.'d it. It cost more than the other and I approved it. All verbally, of course."

The specifications which form part of claimant's contract provide:

"The enamel used on all license plates shall be submitted to, and withstand a salt spray test of 20% solution for a period of 350 hours. The quality and manufacture of the steel and enamel used must be such that the finished plates shall stand bending in the same place six times without cracking or breaking."

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"ENAMELS—in general. These specifications cover enamel for use as the background on license plates and for use as the rolling ink or lettering enamel shall be of the best quality of what is commercially known as pure chrome, prepared, applied and thoroughly baked on the plates and must be applied thick enough to be thoroughly opaque, and must be of such hardness as to resist incision by the finger nail. In short, the workmanship, quality and application of the enamel to the

plates must be such that under ordinary usage there will be no deterioration in its appearance during the period of one year from January 1, 1942. The coloring combination is to be directed by the Secretary of State. The background enamel shall receive two separate coats, each applied separately and each coat baked separately. The back of the tag shall also receive two coats of the same enamel, each baked separately. These applications shall be such that all edges, including the outer edge and the edges of the slots, shall withstand the same tests without a breakdown of the enamel covering these exposed edges. The enamel must stand exposure in a weatherometer (National Carbon Company Weatherometer or equal) for fourteen days without any discoloration or fading."

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The right is reserved to retest all enamel which has been tested and accepted at the source of manufacture, after the same has been delivered at the destination specified, and to reject all enamel which when retested does not meet the requirements of the specification."

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"All material herein specified must be finished in a thorough workmanlike manner and the right is reserved to reject any and all material that does not conform to these specifications; also, any and all material herein specified that fails under ordinary usage. Manufacturers will be required to replace such material free of charges."

Claimant's obligation under these specifications was clearly to furnish a first-class, high grade, all weather surface for the 1942 license plates. Because of war conditions, the exact paint formula could not be followed. At claimant's suggestion, a substitute primer was used. The respondent made no requirements for the substitute other than those already a part of the contract. The fact that the substitute chosen by the claimant was costlier than that originally intended, of itself. creates no obligation on the part of the respondent to pay this additional cost. The substitution could not deprive the respondent of its obvious right under the contract to test and either approve or disapprove the finished product. In the absence of any agreement of the respondent to assume the additional cost, the approval of the substitution can be considered only the exercise of its contract rights.

The increase in the size of the passenger car plates likewise was not the result of any instruction from the respondent. Claimant, in its complaint, alleged that this increase in size was made, in part at least, "to avoid a patent infringement." Mr. Nash testified that the only change made in these plates was a change in the embossing dies; that he did not order the new embossing dies; that this change was made "because in 1939 when Hemp and Company made our plates a man in California had a patent right and he wanted to collect a royalty and in order to get around that it was changed."

The record contains the following testimony of Mr. Nash, on direct examination, and as a witness for claimant:

"Q. Was there any change in the size of the plates or rather increase in the size of the passenger plates which called for additional steel?

A. Yes, there was with the new embossing dies, but I didn't order that.

Q. And that was made necessary by reason of the facts which you have just related?

A. That's right. I didn't order the dies. I just simply told them if they didn't want to pay that royalty they'd have to do that."

The court, therefore, must deny that portion of the claim in the amount of $2,220.32 for increasing the size of the 1942 passenger plates and truck plates; must deny that portion of the claim in the amount of $7,500.00 necessitated by the use of zinc chromate primer on the 1942 plates; and must deny that portion of the claim in the amount of $522.23 for increased size and for use of zinc chromate primer in the manufacture of 155,000 1943 license plates.

It is undisputed, however, that subsequent to the execution of the contracts, respondent instructed claimant to insert the word "Truck" vertically on the 1942 truck plates after the letter prefix. A portion of the

claim, in the amount of $709.04, is the result of claimant's increasing the length of these plates to comply with this instruction. The charge is reasonable and proper; it was incurred through no fault of claimant, but solely by reason of respondent's change of plans and specifications; and it will therefore be allowed. *Willadsen, et al* vs. *State,* 8 C. C. R. 604; *Goelitz Company* vs. *State,* 10 C. C. R. 572.

It is not clear from the record what portion of the claim for 50% of the additional die cost of $3,304.00 is attributable to the increase in size of the 1942 truck plates, and what portion is attributable to the increase in size of the passenger car plates. No award can therefore be made for such additional die cost.

Award is made in favor of the claimant, Hemp and Company, Inc., in the amount of $709.04. The balance of the claim is denied.