(No. 47054

EMMA GALLER, Appellee, v. ROSE GALLER *et al.,* Appellants.

*Opinion filed Sept. 26, 1975.—Rehearing denied Nov. 21, 1975.*

Robert L. Stern, Patrick W. O'Brien, Thomas N. Jersild, and Steven M. Rasher, all of Chicago (Mayer, Brown & Platt, of counsel), for appellants.

Sidney R. Zatz, Jack H. Oppenheim, and Malcolm S. Kamin, all of Chicago (Arvey, Hodes, Costello & Burman, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This is a suit for an accounting arising out of a protracted dispute between two branches of the Galler family. Benjamin and Isadore Galler were brothers and cofounders and equal shareholders in the Galler Drug Company. In July, 1955, the two brothers and their wives executed an agreement to assure financial protection for their families and to provide for equal control of the corporation upon the death of either of the brothers. The

agreement provided that in the event of the death of either brother, his wife was to be elected a director and was to nominate a second director to fill the place of her deceased husband. Each family was to have two directors. Benjamin Galler, president of the company, became seriously ill in 1955 and never returned to his corporate duties but continued to receive an annual salary of $42,000 until his death in December, 1957. Isadore Galler also received an annual salary of $42,000. These equal salaries had been paid to the two brothers pursuant to an informal understanding between them. There was no formal agreement between the brothers or action of the board of directors of the corporation providing for the payment of these salaries.

Isadore's son, Aaron, was secretary of the corporation and was employed by the company mainly as a supervisor of its warehouse. On September 25, 1956, pursuant to action which had allegedly been taken at a meeting of the board of directors of that date, he assumed the office of president of the company with a salary increase of $5,000 a year making his total salary $20,000 annually. The purported meeting of the directors was subsequently held to be invalid.

Suit was filed by Emma Galler, Benjamin's widow, when, shortly after Benjamin's death, Isadore and Aaron excluded Emma from the business and refused to honor the 1955 shareholders' agreement. The defendants had assumed absolute control of the management of the company. Plaintiff's suit was for specific performance of the agreement and prayed that Isadore and Aaron be ordered to account to the Galler Drug Company for the salaries that they had taken as officers. Isadore had continued to draw his salary of $42,000 after Benjamin's death.

In a decree entered July 12, 1962, the trial court, confirming the report of the master in chancery, held the 1955 agreement to be valid and binding and ordered that it be specifically enforced; that directors be elected as

provided in the agreement and that Aaron Galler be enjoined from acting as president of the corporation unless thereafter duly elected at a valid meeting of the board of directors. The part of the decree of primary concern provided:

"The defendants, Isadore A. Galler and Aaron Galler shall and they are hereby ordered to account to the corporation for all monies received by them, and each of them, and by members of their family, from the corporation since September 25, 1956, and in such accounting shall be allowed fair compensation, to be determined by the Court, for services rendered by them to the corporation during said period, with the burden upon them to prove the fair value of any such services."

The appellate court (45 Ill. App. 2d 452) on review reversed the circuit court and held that Isadore Galler did not have to account for his salary and that Aaron Galler had only to account for the increase in his salary from $15,000 to $20,000, which increase had been paid to him after he had assumed the office of president of the company.

On review this court reversed the appellate court except as to the matter of master's fees and upheld the trial court. (32 Ill.2d 16.) In that opinion this court stated:

"We hold defendants must account for all monies received by them from the corporation since September 25, 1956, in *excess of that theretofore authorized.*" (Emphasis added.) (32 Ill.2d 16, 34.)

This present dispute involves Isadore's and Aaron's salaries from September 25, 1956, the date of the invalid directors' meeting, through February 11, 1965, the date this court's judgment was implemented by order of the circuit court. Isadore died on May 27, 1965. He had received his salary of $42,000 a year until February 11, 1965.

On remand the matter was again referred to the master where the defendants took the position that under the italicized language in that part of this court's opinion set out above Isadore Galler was not required to account for any of his salary. It was contended that for some years prior to the death of Benjamin, Isadore had drawn the same salary as Benjamin, namely, $42,000 a year. Defendants asserted before the master that these payments are evidence of the prior authorization of such salary and, thus, it was not in excess of that theretofore authorized.

The master found that the two Galler brothers, Benjamin and Isadore, had always taken equal salaries by informal agreement but that they never entered into any agreement as to future salaries; that this informal agreement terminated with Benjamin's death at the end of 1957; that after Benjamin's death and during the years 1958 through February 11, 1965, Isadore excluded Benjamin's widow from the premises of the drug company; that Isadore continued to draw his salary of $42,000 after Benjamin's death; that, although equal owners of the corporation, the members of the Benjamin Galler family were not consulted as to salaries taken by the members of Isadore Galler's family; that the 1955 agreement had no provision for officers' salaries in the future; and that there had been no corporate authorization for Isadore's salary. The master concluded that pursuant to the informal agreement as to equal salaries which terminated with Benjamin's death, Isadore was authorized to receive $42,000 a year from September 25, 1956, to the date of Benjamin's death at the end of 1957. However, he found there was no authorization for that salary to continue for the years 1958 through February 11, 1965, and that the fair value of Isadore's services to the corporation during that period was $10,000 per year. The master recommended that Isadore's estate repay the corporation $226,666 plus interest.

As to Aaron's salary of $20,000 a year the master

likewise found that there had been no authorization for this salary either by the board of directors of the corporation or by agreement or consent of the shareholders. The master found the fair value of services Aaron rendered to the corporation between September 25, 1956, and February 11, 1965, to be $15,000 a year and recommended that Aaron be ordered to reimburse the corporation $41,666 plus interest.

The trial judge overruled the master's finding as to Isadore and held that the $42,000 a year salary was authorized and also held that the $42,000 a year salary was fair compensation for services rendered by Isadore to the corporation. As to Aaron Galler, the circuit court affirmed the findings of the master holding that he was not authorized to receive the additional $5,000 a year from September 25, 1956, and directed that he repay the corporation $41,666. However, the court found that there was no basis for assessing interest.

The appellate court reversed the circuit court and found that the record supported the master's determination and held that Isadore's estate must account to the Galler Drug Company for $226,666 in salaries he had received for the years 1958 to February 11, 1965. On the cross-appeal of Aaron from the circuit court's order requiring him to account for the $5,000 a year increase in salary between September 25, 1956, and February 11, 1965, the appellate court held that the finding of the master confirmed by the trial court was not against the manifest weight of the evidence. It held that Aaron must account to the drug company for $41,666. On the question of interest, the appellate court held that it viewed the dispute over salaries as a by-product of Isadore's and Aaron's actions violating the 1955 agreement and that the inequitable conduct of these two defendants warrants assessing interest against them. (21 Ill. App. 3d 811.) Each defendant filed a petition for leave to appeal in this court which we allowed.

The center of controversy on this appeal concerns the meaning of the language of this court in 32 Ill.2d at page 34 where it is stated that the defendants must account for all monies received by them from the corporation since September 25, 1956, *"in excess of that theretofore authorized."* Here, as before the master, the defendants contend that since Isadore had received $42,000 a year by informal agreement with Benjamin prior to that date his salary had been "theretofore authorized" within the meaning of that term as used in this court's previous opinion. The defendants argue that under the basic holding of the previous decision in this case (32 Ill.2d 16) in a closely held family corporation formal corporate action is not necessary but that an agreement among the shareholders may constitute binding authorization. It is argued that the informal agreement between the two brothers constituted this authorization binding on the corporation.

The appellate court correctly observed that this court's directive in its previous opinion required a determination not only that there had been a previous authorization for the salaries but also the extent thereof. "The prior authorization must be considered in the context of Isadore's and Benjamin's arrangement of sharing monies equally. Benjamin's death in December, 1957, altered this arrangement and terminated the authorization." 21 Ill. App. 3d 811, 816.

The master in his original recommendations in 1962 approved by this court in our previous opinion considered that the two brothers had each drawn salaries of $42,000 a year until Benjamin's death and concluded that the plaintiff had established her case against Isadore to account to the corporation for unauthorized salaries taken by him "since the death of Benjamin A. Galler." The fact that Isadore's salary of $42,000 a year had been previously authorized and that he was entitled to receive it after September 25, 1956, until Benjamin's death, but not thereafter, had been found by the master, confirmed by

the chancellor and approved by this court in 32 Ill.2d 16. It had therefore been determined that Isadore's salary had been "theretofore authorized." It had also been determined that this authorization extended only to the date of Benjamin's death.

In upholding that decision this court stated in its opinion as originally written: "We hold the Chancellor correctly ordered defendants to account for all monies received by them from the corporation since September 25, 1956."

In the petition for rehearing in that case the defendants argued that the decree of the trial court directing the defendants to account for the monies received from the corporation since September 25, 1956, was based on the conclusion that the shareholders' and directors' meetings of that date "at which Isadore's and Aaron's salaries were authorized were a nullity." The petition for rehearing argued that Isadore's salary was the same as it had been in previous years and that Aaron's salary had previously been $15,000 a year and that "[t]he salaries drawn by Isadore and Aaron prior to the September, 1956 meeting *had been authorized at previous meetings* ***." (Emphasis added.)

The petition for rehearing was denied, but the opinion was modified and the language "in excess of that theretofore authorized" was inserted after the date, September 25, 1956. (32 Ill.2d 16, 34.) This language was inserted in response to the representation that although the meetings of September 25, 1956, were of no effect the salaries had nonetheless been previously authorized by some action binding on the corporation. The insertion of this language in the opinion not only afforded the defendants an opportunity to establish that there had been previous authorization of the claimed salaries as asserted but also acknowledged the conclusion of the master confirmed by the chancellor and approved by this court that Isadore was authorized to receive $42,000 a year after September 25, 1956, to the date of Benjamin's death but not thereafter.

On remand before the master, as stated above, the defendants again relied on the informal agreement between the two brothers to establish Isadore's claim to the continuation of his salary. The findings of the master referred to above show that no other agreement concerning salaries was established and no corporate action on this subject was proved. Thus, no further authorization for the claimed salaries was established. The master concluded, as had previously been determined, that from September 25, 1956, through December, 1957, Isadore was entitled to $42,000 a year, the same salary that Benjamin had received during that time. No additional authorization having been proved, Isadore's right to compensation from the corporation after Benjamin's death must be based on the fair value of the services he rendered to the corporation.

The defendants also argue that they were "holdover officers of the corporation" and were entitled to continue to receive the same salaries they had previously received as such officers. The petition for rehearing filed in the previous review of this case shows that the "holdover" theory had in that case been urged in both the defendants' briefs and again on rehearing. The previous opinion of this court indicates that this theory had not been accepted, and we need not again consider it at this time.

The master found that the fair value of Isadore's services to the corporation did not exceed $10,000 a year. The chancellor overruled the master, reasoning that because the $42,000 salary was reasonable prior to Benjamin's death it was reasonable after his death. The fact that Isadore received the $42,000 a year salary under an informal agreement with his brother is not determinative of the fair value of the services he rendered to the corporation. The chancellor also reasoned that services in a closely held corporation cannot be measured on a scale with open market labor. The defendants in this court argue that Isadore's services have enhanced value by virtue of the

fact that he was a founder of the corporation. This ignores the previous order on the defendants to account which provided the defendants be allowed fair compensation "for services rendered by them to the corporation *during said period.*" (Emphasis added.) We think that under the provisions of this order the fact that Isadore was a cofounder and long-time officer of the corporation does not entitle him to compensation over and above the fair value of the services that he rendered to the corporation during the accounting period.

In light of the defendants' unlawful usurpation of control over the corporation during the period in question the proper test to be applied in determining compensation for the defendants is as outlined in the decree of July 12, 1962, affirmed by this court, that is, defendants should be limited to the fair value of the services they rendered to the corporation during the period while they were in control.

In this case the master heard the evidence and saw the witnesses and made certain findings and recommendations. The chancellor, without hearing any evidence or seeing any witnesses, rejected the findings and recommendations of the master as to Isadore's salary and entered his decree. As a rule a master's findings on controverted facts do not carry the same weight as the verdict of a jury where trial by jury is a matter of right, although they are entitled to serious consideration. The chancellor had no better opportunity to judge the credibility of the witnesses than has this court on appeal. We therefore feel free to make our own independent determination of the facts, giving due consideration to the findings of the master who heard and saw the witnesses. (*Uksas v. Zelensky,* 21 Ill.2d 303; *Kosakowski v. Bagdon,* 369 Ill. 252.) We find from an examination of the record that the master's determination should be upheld.

The evidence shows that during the accounting period Isadore was between 73 and 80 years of age. The master

found that the executive positions of sales manager, credit manager and general manager, which were filled by the same individuals who had held these positions while Benjamin was president of the company, were the responsible positions for carrying on the business of the company. These individuals received $17,500 a year. The master reasoned that Aaron's services were less valuable to the company than those of these individuals and found the fair value of Aaron's services to be $15,000 a year. The master further found that Isadore's services must be valued at a lower rate than Aaron's. In view of his age and considering that the services he performed were primarily clerical in nature, the master found the fair value of Isadore's services to be $10,000 per year.

With regard to Aaron, the finding of the master that the value of his services was $15,000 a year and that there had been no authorization for his $20,000 a year salary was confirmed by the chancellor. It is well established that when the findings of the master are confirmed by the chancellor such findings will not be disturbed unless against the manifest weight of the evidence. (*Anastaplo v. Radford,* 14 Ill.2d 526, 535.) The burden was on Aaron, under the previous decree, to prove the fair value of his services. We conclude that the master's determination that the fair value was $15,000 is not against the manifest weight of the evidence. Aaron must therefore account to the Galler Drug Company for the amount of salary he received during this period in excess of $15,000 per year.

The final question is whether the defendants should be required to pay interest on these amounts. The master's report recommended that interest be assessed against both defendants. The chancellor found that interest should not be assessed. A court of equity may assess interest when warranted by equitable considerations. (*McKey v. McCoid,* 298 Ill. 566; *Groome v. Freyn Engineering Co.,* 374 Ill. 113.) As the appellate court observed, the dispute over salaries is a by-product of defendants' violation of the

1955 agreement and warrants assessing interest against defendants.

The judgment of the appellate court requiring Aaron Galler to account to the Galler Drug Company for $41,666 and remanding the case to the circuit court of Cook County for the assessment of interest on that amount is affirmed. The judgment of the appellate court remanding the case to the circuit court of Cook County with directions to enter an order requiring the estate of Isadore Galler to repay the Galler Drug Company $226,666 plus interest is affirmed.

*Judgment affirmed.*