(No. 78-CC-1063–

GERTRUDE GENDEL and RUTH LEW, individually, and as representatives of all others similarly situated, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 15, 1982.*

*Order filed September 9, 1983.*

*Opinion filed July 11, 1984.*

*Order filed September 12, 1985.*

JACOB R. COHEN, for Claimants.

NEIL F. HARTIGAN, Attorney General (ROBERT J. SKLAMBERG and FRANCIS M. DONOVAN, Assistant Attorneys General, of counsel), for Respondent.

Roe, C.J.

Claimants, Gertrude Gendel and Ruth Lew, both individually and in a representative capacity on behalf of all others similarly situated, brought this action seeking to recover from the State sums of money paid as and for premiums to enroll in part B of the Medicare program and interest thereon from the date of the entry

of judgment in the proceedings brought heretofore in the circuit court of Cook County.

Claimant, Gertrude Gendel, is an "annuitant" and Claimant, Ruth Lew, is an "employee" as those terms are defined by sections 3(b) and 3(k) respectively of the State Employees Group Insurance Act of 1971 (hereinafter "the Act"). (Ill. Rev. Stat. 1983, ch. 127, par. 523.) Sometime after the Act was enacted by the legislature, the Director of the Department of Personnel (hereinafter "the Director") who was charged with implementing said Act, issued the following directive:

"The State Employees Group Insurance Act of 1971 REQUIRES THAT, WHEN PERSONS ARE ELIGIBLE FOR MEDICARE, STATE PLAN BENEFITS WILL BE REDUCED BY THE AMOUNT OF MEDICARE BENEFITS. When Claims are submitted for members covered by Medicare, benefits payable under the State Plan are calculated in the normal manner; benefits payable under Medicare are then subtracted from the State Plan benefit amount; and any difference due is paid by the State Plan. The result is that Medicare and Non-Medicare members receive the same net total benefits.

Medicare Part 'B'—(Physician Care)—Everyone 65 years of age and over is eligible for Medicare Part B and the minimum cost is currently $6.30 per month. The State program assumes all eligible persons will enroll in Medicare Part B and pay the premium cost. IF YOU DO NOT ENROLL IN PART B, THE HEALTH INSURANCE CARRIER WILL DEDUCT FROM ANY STATE PLAN BENEFITS ALL AMOUNTS WHICH PART B WOULD HAVE PAID."

In a class action filed in the circuit court of Cook County as *Gendel v. Jones*, 76 CH 2420, Claimants contended that the directive cited above violated several provisions of the Act. Claimants sought relief to declare the Director's existing policy violative of section 10(a) of the Act, and to the extent covered individuals would continue making premium payments for Medicare part B coverage, the Director would reimburse said individuals for the amounts so paid. Ill. Rev. Stat. 1983, ch. 127, par. 530(a).

The circuit court granted the requested relief on October 19, 1976, by an order granting Plaintiffs' motion for summary judgment. The order was stayed pending appeal and enforcement thereof suspended.

The issue on appeal involved an interpretation of two provisions of the Act. Section 10(a) provides in pertinent part:

"The State shall pay the cost of the basic non-contributory group life insurance and group health insurance on each eligible employee and annuitant, and part of each eligible employee's and annuitant's premiums for health insurance coverage for his dependents as provided by Section 9."

## Section 6 provides in part:

"The group health insurance program shall be designed by the Director (1) to provide a reasonable relationship between the benefits to be included and the expected distribution of expenses of each such type to be incurred by the covered employees and dependents, and (2) to include reasonable controls, which may include deductible and co-insurance provisions, applicable to some or all of the benefits, or a coordination of benefits provision, to prevent or minimize unnecessary utilization of the various hospital, surgical and medical expenses to be provided and to provide reasonable assurance of stability of the program, and (3) to provide benefits to the extent possible to employees throughout the State, wherever located, on an equitable basis.

Where a covered employee or annuitant, or any of their covered dependents, are eligible for benefits under the Federal Medicare health insurance program (Title XVIII of the Social Security Act as added by Public Law 89-97, 89th Congress), benefits paid under the State of Illinois program will be reduced by the amount of benefits paid by Medicare, with premiums adjusted to an amount deemed by the Director to be reasonably consistent with the reduction of benefits."

Plaintiffs argued that to the extent class members were required to pay premiums for insurance coverage while all State employees under 65 years of age received full coverage without cost to themselves, the Director had violated the mandate of section 10(a) of the Act. Defendants asserted that the policy instituted by the Director was within the authority conferred upon him by section 6 of the Act as set forth herein.

The appellate court in its opinion held that the

Director could not effectuate policies in reliance on section 6 which rendered meaningless other provisions of the Act. Hence, the court found that the State was required to pay for the entire insurance coverage, and to the extent the Director's policy required otherwise, that the directive exceeded the authority granted the Director. The court concluded by stating:

"To the extent that the Circuit Court of Cook County determines the rights of the plaintiffs to full coverage without additional cost to themselves, it is affirmed; to the extent it might be construed to purport to enter a monetary judgment against the State of Illinois, it is reversed." *Gendel v. Jones* (1978), 58 Ill. App. 3d 739, 744.

In accordance with the appellate court's decision, Claimants filed this action seeking to recover a monetary judgment against the State in the amount of premiums paid by class members in contravention of the statute.

Initially, we find that this matter is properly before the Court as a class action pursuant to the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—801 *et seq.*) and the Court of Claims Rules 2 and 4. The class, which comprises some 24,000 individuals, is so numerous that joinder is impracticable. There are questions common to the class which predominate over any questions affecting only individuals, *e.g.*, whether Claimants are entitled to recover a monetary award from the State, whether interest is allowable on any such award, etc. The representative parties will fairly and adequately protect the interests of the class as was demonstrated through their able representation in the circuit court proceedings. The class action is an appropriate vehicle for resolving this controversy as the number of Claimants is large while the amount due each is relatively small, thus avoiding the necessity of processing approximately 24,000 separate claims.

Claimants contend that the obligation of the State to

provide group life and group health insurance coverage is contractual in nature and, therefore, failure to provide the same constitutes a breach of contract. We are constrained to find that the Act does not create an enforceable contractual right on behalf of the Claimants. Aside from the other contractual prerequisites of offer and acceptance, we find that there was no consideration passing from Claimants to the State. Claimants have not shown something bargained for and given in exchange for a promise (*Restatement of Contracts* section 75). Furthermore, Claimants cite no authority for the proposition that a statute enacted by the legislature creates contractual rights in the beneficiaries thereof.

Claimants rely on *Syracuse Teachers Association v. Board of Education* (1973), 345 N.Y.S.2d 239, in support of the proposition that the Act provided a fringe benefit which became part of the contract of employment. We find the *Syracuse Teachers* case distinguishable from the instant case. In the former, the teachers negotiated a "sick leave bank" provision as part of its contract with the school district. No such negotiations took place in the instant case, nor have Claimants shown the existence of any contract between the State and themselves.

Claimants next contend that annuitants are members of a pension system of the State of Illinois and that membership in the same "shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." Towards that end Claimants assert that the benefits afforded by the Act are benefits of membership in the pension system. The mere fact that the legislature chose to define "annuitant" (Ill. Rev. Stat., ch. 127, par. 523(b)) by reference to the definitions contained in the Illinois Pension Code does not, of itself, evidence any intent to so tie the two statutes.

We do find that this Court's jurisdiction has been properly invoked pursuant to section 8(a) of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.8(a)). Thereunder, Claimants have stated a claim against the State founded upon a law of the State, to wit a violation of section 10(a) of the State Employees Group Insurance Act of 1971 as set forth hereinabove. That section of the Act required the State to bear the entire cost of the group life and group health insurance program. To the extent that the Director required individuals to pay premiums for Medicare part B coverage, the appellate court of Illinois held that the Director was acting in excess of his authority.

We find that section 10(a) of the Act imposed a statutory duty upon the State acting through its agents, to wit the Department of Personnel, to pay the cost of the specified insurance coverage. By requiring certain individuals to pay the premiums on Medicare part B coverage, the Director, although acting in good faith, violated the provisions of the statute for which plaintiffs are entitled to recover.

Respondent prefaces its arguments by asserting that the violation complained of herein sounds in tort and the doctrine of *respondeat superior* is therefore applicable. Along these lines, Respondent contends that the State would only be subject to liability where the individual (agent) who performed the suspect action would himself be liable. In this instance, Respondent argues, that since the Director would be immune from liability based on the immunity granted public officials for discretionary acts in their official capacity, the State should also be immune from liability. Because a public official may enjoy immunity for acts done in official capacity in courts of the judicial system, it does not necessarily follow that the State has similar or derivative

immunity in this Court. Moreover, while the authority to administer the insurance program was granted to the Director, we would be hesitant to find that the actions complained of were "discretionary" with its meaning as a term of art. Respondent's arguments misperceive the purpose underlying the grant of jurisdiction to this Court.

In order to circumvent the harshness of the common law rule regarding the immunity of the sovereign to suits by its citizens, the courts invented the judicial fiction that where the State was acting through one of its agents and the latter acted in excess of his authority, an action could be maintained against the agent although such a suit was not considered to be a suit against the State. (*People v. Kingery* (1938), 369 Ill. 289, 292.) We are not so hampered by the restrictions regarding suits against the sovereign, for the legislature, through statutory enactment, clothed this Court with jurisdiction to entertain such actions. (Ill. Rev. Stat., ch. 37, par. 439.8 *et seq.*) Pursuant to that authority, this Court is empowered to enter monetary judgments against the State and has in fact entered such judgments in the past.

Additionally there have been several recent cases from the Federal courts which bear heavily on the issue. On September 15, 1981, a Federal judge in the U.S. District Court, (N. Dist., E. Div.), entered an order approving settlement of several issues in *Illinois Health Care Association v. Quern*, No. 77 C 1109. That case was a class action by a group of nursing home operators and others against the former Director of the Illinois Department of Public Aid and other State and Federal government officials seeking declaratory and injunctive relief for their failure to make proper reimbursement to the nursing home operators for expenses they incurred for the care of indigent patients under the Medicaid

program. Although that court was barred from entering a monetary judgment against the State of Illinois because of sovereign immunity, the State made a multimillion-dollar cash payment to the plaintiffs and agreed to increase its contributions to them for the care of Medicaid patients for several million dollars more to dispose of the issues. At the time of the settlement, several claims by the nursing home operators were pending in this Court. Participation in the settlement by the individual nursing homes was conditioned upon their stipulation to dismiss with prejudice their claims pending in this Court.

In *Acoff v. State* (1981), 35 Ill. Ct. Cl. 364, this Court entered an award in the amount of $466,727.37 for 17,659 Claimants pursuant to a stipulation among the parties in settlement of litigation brought in the U.S. District Court entitled *Carey v. Quern*, No. 75 C 3908, which resulted in a finding by the Court that the Illinois Department of Public Aid had wrongfully withheld certain general assistance benefits which the Claimants therein had not received and the General Assembly appropriated the funds to pay said award by P.A. 82—738.

In *Peltz v. State* (1981), 34 Ill. Ct. Cl. 284, this Court entered an award for $522,863.83 for 3,811 Claimants under similar circumstances. There the Claimants alleged entitlement to benefits under the aid to aged, blind, and disabled program administered by the Director of the Department of Public Aid. The award arose out of a settlement by the parties of litigation in a U.S. District Court case entitled *Jordan v. Quern*, No. 70 C 10.

In *Coppotelli v. State* (1981), 35 Ill. Ct. Cl. 328, we awarded $483,020.00 to approximately 280 employees of the Illinois Secretary of State's Office. The case arose out

of a settlement of an action filed in the U.S. District Court for the Eastern District (now Southern District) of Illinois. The Claimants therein were female driver examiner aides who unsuccessfully applied for or were available and qualified for the higher position of driver examiner. The suit alleged discrimination by the Secretary of State and certain supervisory personnel in his office against the Claimants because of their sex, in that females were in practice and policy eligible only for positions as aides while males were provided jobs as driver examiners.

There are strong similarities between those cases and the claim at bar. In each of the first three cases cited above a director of a department of the State of Illinois refused to make payments to a class of persons who claimed to be entitled to them under the law. In the last of the cited cases a constitutional officer of the State was alleged to have committed certain acts which were said to have deprived the class of rights to which they were entitled. Litigation in the courts followed. In at least the first three cases the State raised the issue of sovereign immunity. The actions taken by the persons sued were no more or less discretionary than in the case at bar. The courts took jurisdiction on the theory that the suits were not against the State but its officials, who were alleged to have exceeded their authority in refusing to make the payments the plaintiffs sought or violating plaintiffs' rights. The claims were filed in this Court because it was the only tribunal which could enter an award against the State. The State in this case has resisted payment on a theory equally applicable to the above cited claims which it subsequently agreed to pay. And it should be pointed out that those cases were not settled or paid pursuant to the Representation and Indemnification Act (Ill. Rev. Stat., ch. 127, pars. 1301, 1302), which

specifically provides for the State's representation and indemnification of its employees in certain instances where suit is brought against them arising out of acts or omissions within the scope of their employment.

We find, notwithstanding Respondent's assertions to the contrary, that this action arises out of a breach of a statutory obligation and does not sound in tort, that the doctrine of *respondeat superior* is not applicable, and that the Claimants are entitled to recover the damages they sustained stemming from the policy implemented by the Director.

Claimants seek to recover interest from October 19, 1976, at the rate of 6%. To the extent that Claimants are seeking an award of interest on a judgment, we hold that no judgment has been heretofore entered upon which interest could accrue. The circuit court was without power to enter a monetary judgment against the State as was stated in the appellate court's opinion. Rather, the circuit court entered a prospective order requiring the Director to reimburse individuals who subsequently paid the premium for Medicare part B coverage. In effect, that court restrained the Director from requiring that covered individuals pay the premiums for part B coverage. No monetary judgment was entered upon which interest could accrue.

To the extent that the Claimants are contending that, had the State been a private litigant, the circuit court would have entered judgment against it for damages, and the judgment would have borne interest as provided by statute, consider that we have consistently held that the State of Illinois is not liable for the payment of interest on claims in this Court in the absence of a statute *expressly* subjecting it to such liability. (*Mooney Construction Co. v. State* (1982), 35

Ill. Ct. Cl. 116; *Caymen Associates Ltd. v. State* (1980), 33 Ill. Ct. Cl. 301; *Noltemeier v. State*, 79-CC-0621.) We do not consider Ill. Rev. Stat., ch. 74, par. 3, as having any applicability to proceedings in the Court of Claims as the State is not expressly mentioned therein. Our interpretation is bolstered by the fact that various bills have been introduced in the legislature in recent years to subject the State to the payment of interest on awards made by this Court and none have passed.

Additionally, Claimants contend that this Court has power to award interest based on equitable principles. In support thereof Claimants cite *G. H. Sternberg & Co. v. Bond* (1975), 30 Ill. App. 3d 874, 333 N.E.2d 261, and *Steen v. State*, 29 Ill. Ct. Cl. 111. Claimants obviously are relying on the language in the second to last paragraph of the *Sternberg* case, to wit:

"It is clear that the jurisdiction of the Court of Claims is not limited to money 'claims,' and that one may pursue remedies in the Court of Claims other than for the recovery of a sum of money." (30 Ill. App. 3d 874, 333 N.E.2d 261.)

Insofar as this language may be construed to mean that the Court of Claims has equitable jurisdiction, such construction is erroneous. It is noteworthy that in seeking relief in this Court following the decision in that case, Sternberg dropped its claim for equitable relief. The cases cited by the appellate court in *Sternberg*, in the same paragraph quoted from above, do not lend support to Claimants' position. *Allen v. State* (1915), 2 Ill. Ct. Cl. 404 and *New Era Construction Co. v. State* (1928), 6 Ill. Ct. Cl. 88 were decided under a different Court of Claims act than is now in effect. The "equity and good conscience" test was abolished by the 1945 Court of Claims Act. (See *McCay v. State* (1951), 21 Ill. Ct. Cl. 90.) *Fuhrer v. State*, 22 Ill. Ct. Cl. 144, the other case cited in the aforesaid paragraph, is irrelevant to the

issue at bar. The *Steen* case, *supra*, is also irrelevant as that case dealt with an alleged discrepancy between the size of jury verdicts and awards made by the Court of Claims.

The Court of Claims is a court of limited rather than general jurisdiction. Pursuant to article 13, section 4 of the 1970 Constitution of Illinois, the Court of Claims has only such jurisdiction as stated in section 8 of the Court of Claims Act and related statutes. (Ill. Rev. Stat. 1981, ch. 37, par. 439.8.) Nowhere has the Court been granted equitable powers. It cannot even enforce its own subpoenas but must go to a circuit court for enforcement. Therefore, those cases cited by Claimant for the proposition that courts of equity allow interest where justice requires it, *Duncan v. Dazey* (1925), 318 Ill. 500, 149 N.E. 495, and *Galler v. Galler* (1975), 61 Ill. 2d 464, 336 N.E.2d 886, are inapposite. The legislature is well aware of this Court's interpretation of law regarding interest and has failed to pass, despite numerous attempts, authorizations for the Court to award interest on claims of this nature. We are constrained to deny Claimants' claim for interest.

Finally, we turn to Claimants' attorneys' request for an award of fees. In the light of the foregoing, we hold that an award of reasonable attorney fees is appropriate. We hereby grant Claimants' attorneys 60 days from the entry of this order to present a petition for attorney fees. Whereafter we will make a determination as to an appropriate amount, said amount to be deducted *pro rata* from the total refund found to be due and owing Claimant class.

Judgment is hereby entered in favor of the Claimants on the issue of liability only in accordance with the above.

## ORDER

ROE, C.J.

On December 15, 1982, this Court rendered its opinion in the above entitled matter in which it held that the named Claimants and the members of the class they represent are entitled to recover from the State of Illinois the damages they sustained stemming from the policy of successive directors of the Department of Personnel which required them to enroll in part B of the Medicare program and pay the premiums therefor or have their benefits under the State employees' group health insurance program reduced by the amount of benefits such enrollment would have provided. It found that this policy breached the State's statutory obligation to pay the entire cost of the insurance coverage.

To assist the Court in the implementation of its finding of the State's liability, it re-referred the matter to the Hon. Joseph P. Griffin, commissioner. The commissioner has heard the parties and has rendered his report to this Court. The Court, being fully advised in the premises finds:

1. The parties have stipulated that:

(a) "It is agreed that if the State is liable in damages for any period, each award shall be in an amount equal to the sum of the Part B Medicare premiums applicable to each month in that period within which the class member was 65 years or older."

(Stipulation, par. 14.)

(b) The policy of the successive directors of the Department of Personnel, which the Court found to be a breach of the State's obligation to the members of the class, was in effect during the period commencing January 1, 1972, and ending June 30, 1978.

(Stipulation, par. 3.)

(c) The federally established premium rates for

Medicare part B coverage for the periods here involved are:

| | |
|---|---|
| July 1971 — June 1972 | 5.60 |
| July 1972 — June 1973 | 5.80 |
| July 1973 | 5.80 |
| August 1973 | 6.10 |
| September 1973 — June 1974 | 6.30 |
| July 1974 — June 1976 | 6.70 |
| July 1976 — June 1977 | 7.20 |
| July 1977 — June 1978 | 7.70 |

(Stipulation, par. 6.)

2. The members of the class who are eligible for an award are all "employees" and "annuitants," as those terms are defined in the State Employees Group Insurance Act of 1971, who were 65 years of age or older on January 1, 1972, and those who thereafter attained that age prior to July 1, 1978.

3. Each eligible member of the class is entitled to an award equal to the sum of the part B Medicare premiums applicable to each month during which he or she was covered by the Illinois employees' group health insurance program within the period commencing on January 1, 1972, and ending on June 30, 1978, within which the member was 65 years of age or older, reduced by the *pro rata* share of attorney fees attributable to the award based upon the Court's estimate of the total entitlement of all eligible members of the class.

4. It is the obligation of the Respondent to give each eligible member of the class personal notice of his or her rights under the opinion of this Court, and to take all reasonable steps to disseminate such information to those whose identity is unknown after a search of the relevant records of its departments, agencies, boards,

commissions, universities and retirement systems, by publication of notice in appropriate news media.

It is therefore ordered:

1. Based upon the information in its records and that available to it from all other sources, the Department of Central Management Services shall mail to each eligible class member, or if the member has died, to such member's beneficiary, a notice and a statement of entitlement in the form attached to this order and made a part hereof, within 120 days of the entry of this order.

2. An award shall be entered in favor of each eligible class member in the amount stated in his or her statement of entitlement, less attorney fees, unless the member has objected thereto or requested exclusion within the time and in the manner set forth in the notice. If the member has died, his or her rights may be exercised by the member's administrator or executor or, if no estate has been opened, by the person or persons entitled thereto under section 25—1 of the Probate Act of 1975. Ill. Rev. Stat. 1981, ch. 110 1/2, par. 25—1.

3. All objections to the statement of entitlement shall be referred to a commissioner.

4. The Respondent shall file a report of progress with the clerk of the Court, together with proof of service upon counsel for the Claimants, within 30 days of the entry of this order, and monthly thereafter, until final disposition of this matter.

OPINION

Roe, C.J.

This is a class action involving an estimated 26,000 State employees and annuitants (or their survivors) and

an aggregate award sought for $8,434,875.50. The cause of action arose from the policy of successive directors of the Department of Personnel (now Central Management Services) from January 1, 1972, through June 30, 1978. The policy required all State employees and annuitants who were Medicare-eligible (65 years of age or older) during the relevant time period to enroll in Medicare part B (physician care) and pay the premiums thereof or have their benefits under the State employees' group health insurance program reduced by the amount of benefits such enrollment would have provided.

As a result, State employees and annuitants who attained the age of 65 were compelled to enroll in part B of the Medicare program in order to retain the same health insurance coverage as they enjoyed prior to reaching the age of 65. The alternative was not enrolling and being left effectively uninsured for physician's costs.

The representative Claimants brought a class action in the circuit court of Cook County on April 27, 1976 (76 CH 2420), which resulted in the invalidation of the aforesaid policy of the Department of Personnel. Upon appeal, the appellate court (58 Ill. App. 3d 739), on March 13, 1978, affirmed the judgment of the circuit court but ruled that only the Court of Claims had jurisdiction to award damages against the State of Illinois.

Effective July 1, 1978, the Department of Personnel commenced compliance with the Court's order by revising the State employees' group health insurance program so that no member is required to enroll in Medicare part B, and those who are 65 or older are afforded the same health insurance coverage as are all other members. Those who do enroll in part B now receive added coverage so that between the combina-

tion of payments by Medicare and the State plan, their yearly medical expenses for physician care are often paid in full.

The State, however, refused to reimburse the members of the Claimant class for part B premiums attributable to the period during which the invalidated policy was in effect, January 1, 1972, through June 30, 1978. To secure an appropriate award to each member of the class, the above-entitled action against the State was filed in the Court of Claims. On December 15, 1982, the Court rendered its opinion in which it held that the named Claimants and the class they represent are entitled to recover from the State the damages they sustained as a result of the above-described policy of the Department of Personnel.

The Court of Claims determined on September 9, 1983, that class members are entitled to an award equal to the sum of part B Medicare premiums applicable to each month during which he or she was covered by the Illinois employees' group health insurance program, and was 65 years or older, within the period commencing January 1, 1972, and ending June 30, 1978.

The Illinois Department of Central Management Services, which now administers the Illinois employees' group health insurance program, has since calculated the respective amounts of reimbursement to the individual class members, and the aggregate thereof, based upon the federally established premium rates for Medicare part B coverage for the period here involved.

It is therefore ordered that Gertrude Gendel and Ruth Lew, and the class of Claimants whom they represent herein, be and hereby are awarded the aggregate amount of eight million four hundred thirty-

four thousand, eight hundred seventy-five dollars and fifty cents ($8,434,875.50), to be distributed to the individual class members in accordance with the provisions of this Court's September 9, 1983, order, hereinbefore mentioned.

## ORDER

Montana, C.J.

A hearing on the above-entitled claim was held on July 29, 1985, at the Court of Claims hearing room, State of Illinois Center, 100 W. Randolph Street, Chicago, Illinois.

Jacob R. Cohen, the attorney for the Claimants herein, appeared on behalf of his petition for the awarding of fees to him for services rendered in the above-entitled claim. Neil F. Hartigan, Attorney General, State of Illinois, by Robert Sklamberg, Assistant Attorney General, appeared on behalf of Respondent, State of Illinois.

Petitioner, Jacob R. Cohen, sets out in his petition that in August of 1975, he began handling this claim by requesting the director of the Department of Personnel to rescind his order requiring employees over 65 to pay premiums on part B Medicare for their health insurance. Subsequent thereto, he filed a lawsuit in the circuit court of Cook County. The circuit court held that the State had no authority to order employees to pay for this insurance. The appellate court subsequently affirmed the decision of the circuit court of Cook County. Petitioner filed this class action suit in the Court of Claims and after hearings, the Court entered an award in the amount of $8,434,875.50.

Subsequent thereto, the Illinois legislature appro-

priated said amount for payment to the class members. Petitioner now seeks approval of his fee to be paid out of said award on a *pro rata* basis to each member of the class numbering in excess of 24,000. Petitioner seeks the sum of $644,700.00, which amounts to approximately 7.6% of the award. Petitioner alleges that there is an additional savings to the members of the class which now approximates $24,628,800.00 and these savings will continue for the life of each member. Petitioner also alleges that the real benefit to the class as of this date exceeds $33 million. Petitioner further alleges that over the years during the pendency of this claim he expended approximately 924 hours on this claim litigation.

The Court finds that, taking into consideration the result obtained by Petitioner and the time and efforts involved by him, that Petitioner's fee herein sought in the amount of $644,700.00 should be allowed.

Wherefore, it is hereby ordered that Petitioner, Jacob R. Cohen, be awarded the sum of $644,700.00 as his fee for services rendered in the above-entitled claim. It is further ordered that payment of said fee be deducted from the award previously entered herein and be pro rated as to each individual member of the class.