(No. 85-CC-0445-

UNIVERSAL PRINTING COMPANY, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 29, 1990.*

KENNETH R. LANGSDORF, for Claimant.

NEIL F. HARTIGAN, Attorney General (CLAIRE GIBSON TAYLOR, Assistant Attorney General, of counsel), for Respondent.

## OPINION

SOMMER, J.

This claim arises out of a printing contract between the Claimant and the Department of Commerce and Community Affairs. The parties have entered into a stipulation which is as follows:

### Stipulation

1. Claimant's claim is grounded on and based upon section 8(b) of the Court of Claims Act. Ill. Rev. Stat. 1973, ch. 37, par. 439.8(b).

2. As a result of a sealed bid opening on August 29, 1983, Claimant was awarded a contract based upon its bid dated August 26, 1983, for the printing of 300,000 "1983 Illinois books" and 100,000 white Kraft envelopes.

3. The contract forming the basis of the claim was effective on August 29, 1983, was signed September 22, 1983, and was confirmed by print order No. 37962 dated October 5, 1983.

4. The specifications of the contract and print award called for a delivery date of not later than October 31, 1983.

5. The printing work was ultimately delivered to and accepted by Respondent on or about July 11, 1984.

6. Based upon the contract and the specifications calling for a delivery of "no later than October 31, 1983," Claimant did order, specifically for this printing job, the paper stock necessary for printing of these books. These orders were placed by Claimant with its suppliers in September 1983, following the notification of the award of the contract on August 29, 1983. The paper stock was received by Claimant and paid for within the normal terms of the paper merchant.

7. The specifications for the printing job called for an exact reprint of the sample book furnished to the bidders and for "all negatives and separations" to be furnished the printer by the Department of Commerce and Community Affairs.

8. Subsequent to the placing of the order for paper, the Department of Commerce and Community Affairs made a number of changes in the specifications, which delayed the printing of the books and envelopes. Instead of receiving the necessary "negatives and separations" from the State of Illinois in October 1983, changes in copy were being made at the specific request of the Department of Commerce and Community Affairs as late as May 17, 1984. Final authorization to proceed was not given to Claimant until on or about June 1, 1984.

9. By letter of July 19, 1984, Claimant requested relief from the Department of Commerce and Community Affairs in the amount of $24,306.10. Claimant's claim for additional costs was not processed by the Illinois Department of Commerce and Community Affairs, because it was not received by June 30, 1984, the end of the State's fiscal year, and therefore, constituted a "lapsed appropriation."

10. Monies were available in the Department of Commerce and Community Affairs appropriated budget for the fiscal year commencing July 1, 1984, to pay the full amount of Claimant's claim.

11. On September 17, 1984, Claimant submitted a claim for $24,306.10 to the director of the Illinois Court of Claims.

12. Claimant's claim is composed of three elements:

| | |
|---|---|
| Element No. 1—Warehousing costs | $ 2,562.72 |
| Element No. 2—Carrying cost of paper | 17,653.36 |
| Element No. 3—Incremental printing costs— increase factor | 4,090.02 |
| | $24,306.10 |

13. On October 3, 1985, in response to the request of Respondent for more detailed justification of the warehousing cost component of the claim, Claimant forwarded certain materials to Respondent under cover of letter of that date.

14. The parties agree that, should this Court find liability on the part of Respondent, the appropriate amount for an award for element No. 1 is $2,562.72, and for element No. 3 is $4,090.02.

15. With respect to element No. 2 of the claim, "carrying cost of paper," the parties have not come to agreement as to the amount of monies due and owing Claimant and submit the determination as to the amount to the Commissioner, based upon the facts herein and previously set forth.

16. All delays and change orders in carrying out the printing contract, subsequent to the award of printing order No. 37962 to Claimant on August 29, 1983, until the final authorization to proceed with printing by Respondent to Claimant on or about June 1, 1984, were at the specific request and instance of Respondent.

17. Immediately upon receiving the notice of authorization to proceed, Claimant promptly, and to the complete satisfaction of Respondent, completed all work required under said contract with delivery on or about July 11, 1984.

18. Claimant did forthwith, upon the award of the contract to it, order, receive shipment of, pay for and store the necessary paper stock at its own facility, awaiting authority to proceed, until ultimately utilized—a period of approximately 8½ months.

19. The cost of the paper stock, as paid for by Claimant, was $176,534.00.

(End of stipulation)

The issues under consideration are whether or not the Claimant is entitled to recover the stipulated amount of damages sustained for warehousing costs in the amount of $2,562.72 and for incremental printing costs in the amount of $4,090.02 as well as Claimant's alleged damages for what Claimant defines as carrying costs of paper stock beyond the bid date of October 31, 1983.

Claimant submitted its bid for the printing of a number of "1983 Illinois books" on August 26, 1983, which bids were opened by the Respondent on August 29, 1983 and a contract was signed September 22, 1983 and was confirmed by print order issued by the Respondent on October 5, 1983. The bid solicitation as well as the specifications of the contract and print award provided for a delivery date of not later than October 31, 1983. Claimant immediately placed an order for paper stock which was then delivered to Claimant and payment made therefore. Subsequent to the placing of the order for the paper by the Claimant, the Department of Commerce and Community Affairs made a number of changes in the specifications, thus delaying the printing of the books and envelopes. Changes were requested by the Respondent as late as May 17, 1984, and it did not give final authorization that Claimant should proceed until on or about June 1, 1984.

Respondent suggests that a careful reading of the contract would show that no delivery date is provided, but that it merely states that the contract has a term of August 29, 1983 through June 30, 1984. Respondent maintains that although the delivery date of no later than October 31, 1983 was stated in the original bid specifications, said bid specifications are not incorporated by reference into the contract.

The United States Supreme Court has held that acceptance by public authorities of a bid submitted pursuant to a proposal or advertisement for bids for a contract for public work *upon the specifications and terms of such proposal* converts the offer into a binding contract. (*Harvey v. United States* (1882), 105 U.S. 671.) Therefore, the public authorities who award a bid are limited by the plans and specifications as defined prior

to the submission of the bid, and cannot award a contract which significantly detracts from that so indicated in the specifications.

In the instant case, the bid specifications clearly call for a delivery date of October 31, 1983. In fact, no delivery date is stated in the contract itself. When the Claimant calculated its bid, it justifiably relied upon the delivery date as set forth in the specifications.

The Illinois Court of Claims has consistently held that where a Claimant enters into a contract with the State, and sustains damages through no fault of its own, but occasioned solely by the State through a change of plans and specifications, the Claimant is entitled to an award for damages. (*Hemp & Co. v. State* (1944), 13 Ill. Ct. Cl. 183; *Hoeffken Bros., Inc. v. State* (1975), 30 Ill. Ct. Cl. 453.) Therefore, the Claimant herein is clearly entitled to payment of $4,090.02 in incremental printing costs, that is, increased labor costs.

In regard to the other elements of damages, this claim is somewhat different than the usual claim presented to this Court dozens of times each year. Usually, the Claimant has delivered goods to the State and has not been paid. There are many reasons for no payment; but it can be caused by the State's error, invoices are lost, vouchers are not presented, etc. In this claim the paper was not delivered but sat in the Claimant's warehouse for eight months. The Claimant would have gladly delivered printed paper but was prevented from doing so by the State. There is a real, though indirect, cost of storing the paper in the quantity and bulk herein and protecting it from damage. Therefore, we award the stipulated amount of $2,562.72 for storage or warehousing costs.

The Claimant also prays for damages for the "carrying cost" of the paper. This is the cost of having money tied up in the paper that could have been employed in earning profits or interest. "Carrying cost" appears to be an artful form of claiming interest. The Illinois Supreme Court has held that interest costs are not chargeable to the State unless a statute specifically imposes such against the State. (*City of Springfield v. Allphin* (1980), 82 Ill. 2d 571.) In the usual case a vendor delivers goods and is not paid until later. In these cases, interest always has been denied, even if the State caused the payment delay, due to the lack of statutory authority or equitable powers to pay interest. (*Branch-Nicoloff Co. v. State* (1988), 40 Ill. Ct. Cl. 252.) See *Gendel v. State* (1985), 38 Ill. Ct. Cl. 76, for a detailed discussion of the issue of "interest." This claim appears to be no different in substance from the usual interest claim. This claim is for interest and must be denied by us. It is therefore, ordered that the Claimant be paid $6,652.74.